# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00783-CV

**Appellant, Republican Governors Association // Cross-Appellant, Chris Bell**

**v.**

**Appellee, Chris Bell // Cross-Appellee, Republican Governors Association**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. D-1-GN-07-003955, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

These cross appeals concern alleged Election Code violations during the 2006 Texas gubernatorial election. Appellee Chris Bell sued appellant Republican Governors Association (RGA), seeking statutory damages based on RGA's two contributions of $500,000 to Governor Rick Perry's political committee, Texans for Rick Perry. *See* Tex. Elec. Code §§ 253.131, 254.231. After a bench trial, the trial court rendered judgment in Bell's favor and issued findings of fact and conclusions of law that RGA violated the Election Code when it made the disputed contributions because it failed to (i) file a campaign treasurer appointment, (ii) file a report showing its contributions and expenditures, and (iii) provide a donor list to Texans for Rick Perry that was in compliance with the Election Code. *See id*. §§ 253.032, 253.037, 254.1581. In its final judgment, the trial court ordered RGA to pay Bell $2,000,000—twice the amount of the contributions—plus attorney's fees and costs. *See id*. §§ 253.131, 254.231.

On appeal, RGA contends that the trial court erred by holding it liable for the alleged Election Code violations. It argues that the Election Code does not require it, an out-of-state political committee, to file a campaign treasurer appointment or a report showing its contributions and expenditures with the Texas Ethics Commission (TEC), the Federal Election Commission (FEC), or other state filing authorities. It also argues that section 253.032, the section of the Election Code concerning the donor list, does not apply to it. *See id.* § 253.032. Bell contends on cross appeal that the trial court erred by not awarding him an additional $2,000,000 in statutory damages. For the reasons that follow, we reverse the trial court's judgment, render judgment that Bell take nothing, and remand the case to the trial court for the limited purpose of determining whether to award attorney's fees to RGA.

**BACKGROUND**

**Election Code Provisions**

We begin with a brief overview of relevant provisions in chapters 251 to 254 of the Election Code. Those chapters are within Title 15, which regulates political funds and campaigns. Chapter 251 provides general provisions such as definitions, chapter 252 addresses campaign treasurers, chapter 253 addresses restrictions on political contributions and expenditures, and chapter 254 addresses record-keeping and reporting requirements.

Chapter 251 contains definitions for a "political committee," "general-purpose committee," "specific-purpose committee," and "out-of-state political committee." Tex. Elec. Code § 251.001(12)–(15). Section 251.001(12) defines a "political committee" as "a group of persons that

2

has as a principal purpose accepting political contributions or making political expenditures." *Id*.

§ 251.001(12). "General-purpose committee" is defined to mean:

> a political committee that has among its principal purposes:
>
> (A)    supporting or opposing:
>
>> (i)    two or more candidates who are unidentified or are seeking offices that are unknown; or
>> (ii)    one or more measures that are unidentified; or
>
> (B)    assisting two or more officeholders who are unidentified.

*Id*. § 251.001(14).[1] An "out-of-state political committee" is defined to mean:

> a political committee that:
>
> (A)    makes political expenditures outside this state; and

---

[1]  In contrast to a general-purpose committee, a "specific-purpose committee" is defined to mean:

> a political committee that does not have among its principal purposes those of a general-purpose committee but does have among its principal purposes:
>
> (A)    supporting or opposing one or more:
>
>> (i)    candidates, all of whom are identified and are seeking offices that are known; or
>> (ii)    measures, all of which are identified;
>
> (B)    assisting one or more officeholders, all of whom are identified; or
>
> (C)    supporting or opposing only one candidate who is unidentified or who is seeking an office that is unknown.

Tex. Elec. Code § 251.001(13).

(B)    in the 12 months immediately preceding the making of a political expenditure by the committee inside this state (other than an expenditure made in connection with a campaign for a federal office or made for a federal officeholder), makes 80 percent or more of the committee's total political expenditures in any combination of elections outside this state and federal offices not voted on in this state.

*Id*. § 251.001(15).

Section 251.005 expressly exempts out-of-state political committees from being subject to chapters 252 and 254 except as otherwise provided in that section. *Id*. § 251.005. If an out-of-state political committee voluntarily chooses to file a campaign treasurer appointment under chapter 252, the committee "becomes subject to this title [title 15] to the same extent as a political committee that is not an out-of-state committee." *Id*. § 251.005(b). An out-of-state political committee also "becomes subject to this title [title 15] to the same extent as a political committee that is not an out-of-state committee" if the committee "performs an activity that removes the committee from out-of-state status as defined by Section 251.001(15)." *Id*. § 251.005(c); *see id*. § 251.001(15). Further, "[a]n out-of-state political committee that does not file a campaign treasurer appointment shall comply with [the reporting requirements of] Section 254.1581." *Id*. § 251.005(d).

Chapter 252 provides statutory instructions for how and where to file campaign treasurer appointments, such as the content of the appointment and the specific authority with whom the appointment should be filed. *See generally id*. §§ 252.001–.015. A general-purpose committee must file its campaign treasurer appointment with the TEC. *Id*. § 252.009.

Chapter 253 addresses restrictions on contributions and expenditures. *See generally id*. §§ 253.001–.176. Section 253.031 restricts contributions and expenditures by candidates or

political committees without a campaign treasurer appointment on file. *See id*. § 253.031.[2] It expressly states that it does not apply to an out-of-state political committee unless "the committee is subject to Chapter 252 under Section 251.005." *See id.* § 253.031(e). The next several sections in chapter 253 place additional limits and restrictions on contributions and expenditures, expressly delineating who is subject to the particular limitation or restriction. For example, section 253.032 restricts the acceptance of political contributions exceeding $500 by candidates, officeholders, and political committees from out-of-state political committees. *Id*. § 253.032. Section 253.037 places further restrictions on general-purpose committees, prohibiting contributions and expenditures until 60 days after they file their campaign treasurer appointment. *See id*. § 253.037. Section 253.131 authorizes civil liability and statutory damages to opposing candidates for violations of chapter 253. *See id*. § 253.131. Section 253.131(a) states: "A person who knowingly makes or accepts a

---

[2] Section 253.031, titled "Contribution and Expenditure Without Campaign Treasurer Prohibited," states in relevant part:

> (b)     A political committee may not knowingly accept political contributions totaling more than $500 or make or authorize political expenditures totaling more than $500 at a time when a campaign treasurer appointment for the committee is not in effect.
>
> (c)     A political committee may not knowingly make or authorize a campaign contribution or campaign expenditure supporting or opposing a candidate for an office specified by Section 252.005(1) in a primary or general election unless the committee's campaign treasurer appointment has been filed not later than the 30th day before the appropriate election day.
> . . . .
>
> (e)     This section does not apply to an out-of-state political committee unless the committee is subject to Chapter 252 under Section 251.005.

Tex. Elec. Code § 253.031.

5

campaign contribution or makes a campaign expenditure in violation of this chapter is liable for damages as provided by this section." *Id*. § 253.131.

The subchapters of chapter 254 address record-keeping and reporting generally and specifically as to candidates, officeholders, general-purpose committees, and specific-purpose committees. *See generally id*. §§ 254.001–.232. Although out-of-state political committees are exempt from chapter 254 generally, section 254.1581, which is within the subchapter on general-purpose committees, prescribes reporting requirements for out-of-state political committees. *See id*. § 254.1581. There is also a civil liability provision in chapter 254, which states:

> A candidate or campaign treasurer or assistant campaign treasurer of a political committee who fails to report in whole or in part a campaign contribution or campaign expenditure as required by this chapter is liable for damages as provided by this section.

*See id*. § 254.231(a). With this statutory framework in mind, we turn to the parties' dispute.

**The Parties' Dispute**

Chris Bell was the democratic nominee for Texas governor in 2006 and was running against Rick Perry. Governor Perry financed his gubernatorial campaign through a Texas political committee called Texans for Rick Perry. *See id*. § 251.001(12) (defining "political committee"). RGA sent two $500,000 checks to Texans for Rick Perry, one in October 2006 and the other one on November 1, 2006. At that time, RGA was not registered as a political committee with the TEC, the FEC, or any state filing authority and had not filed reports or a campaign treasurer appointment with the TEC, the FEC, or any state filing authority. RGA was a "political organization" under

6

section 527 of the Internal Revenue Code. *See* 26 U.S.C. § 527. It filed reports of its contributions and expenditures with the IRS, and the IRS posted copies of the reports on its website.

After the election, Bell filed this lawsuit, seeking statutory damages based on RGA's alleged violations of the Election Code.[3] *See* Tex. Elec. Code §§ 253.131, 254.231. He alleged that RGA violated sections 253.032 and 253.037 by contributing $1,000,000 to a Texas political committee without having appointed a campaign treasurer and without supplying the Texas political committee with a complete donor list. *See id*. §§ 251.001(14) (defining "general-purpose committee"), 253.032 (limiting acceptance of contributions from out-of-state political committees), 253.037 (restricting contributions or expenditures by general-purpose committees). He also alleged that RGA failed to comply with the reporting requirements for out-of-state political committees in section 254.1581. *See id*. § 254.1581 (reporting requirements for out-of-state political committees). RGA denied Bell's claims and filed a counterclaim for attorney's fees. *See id.* §§ 253.131(e), 254.231(d).

During trial, the parties submitted testimonial, documentary, and stipulation evidence to the trial court. The trial court thereafter rendered final judgment in Bell's favor on his claims against RGA and entered findings of fact and conclusions of law. The trial court concluded that RGA was both a general-purpose and an out-of-state political committee and that it had violated sections 253.032, 253.037, and 254.1581 of the Election Code when it made its contributions to

---

[3] Bell also sued Texans for Rick Perry and Dr. Richard Box, the campaign treasurer of Texans for Rick Perry. Before the bench trial, Bell, Texans for Rick Perry, and Box notified the trial court that they had resolved their dispute. Accordingly, the trial court dismissed Bell's claims against Texans for Rick Perry and Box with prejudice.

Texans for Rick Perry. *See id*. §§ 253.032, 253.037, 254.1581.[4]  Based on these violations, the trial

court awarded Bell $2,000,000 in statutory damages, plus costs and attorney's fees through trial and

on appeal. *See id*. §§ 253.131, 254.231.  These cross appeals followed.

**ANALYSIS**

In three issues, RGA challenges the trial court's holdings that RGA violated Election

Code provisions at the time that it made the two $500,000 contributions to Texans for Rick Perry.

RGA contends that the plain language of section 253.037 did not require it to file a campaign

treasurer appointment, the plain language of section 253.032 did not apply to it because that section

expressly applies only to the recipient of political contributions, and section 254.1581 did not apply

to it because the FEC and other state filing authorities did not require RGA to file reports

of its expenditures and contributions with them in the first instance. *See id.* §§ 253.032,

253.037, 254.1581.

Bell raises one issue on cross appeal.  He contends that the trial court should have

awarded $2,000,000 in statutory damages pursuant to section 253.131 and $2,000,000 in statutory

damages pursuant to section 254.231 for a total damages award of $4,000,000. *See id*.

§§ 253.131, 254.231.

---

[4]  The final judgment refers to section 253.002 instead of section 253.032, but the parties
agree that section 253.032 is the section at issue.

**Standard of Review**

The parties' issues concern statutory construction. We review matters of statutory construction de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). Of primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009); *Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex. 2000). "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We consider the entire act, not isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

**RGA's Issues**

### i) Section 253.037

In its first issue, RGA contends that the trial court erred by holding it liable to Bell for violating section 253.037. *See* Tex. Elec. Code § 253.037. Among other things, section 253.037, titled "Restrictions on Contribution or Expenditure by General-Purpose Committee," prohibits a general-purpose committee from knowingly making or authorizing a political contribution or expenditure "unless the committee has . . . filed its campaign treasurer appointment not later than the 60th day before the date the contribution or expenditure is made." *Id*. § 253.037(a)(1).

It is undisputed that RGA had not filed a campaign treasurer appointment with the TEC, the FEC, or another state filing authority, but RGA urges—and Bell does not dispute—that it falls within the definition of an out-of-state political committee. *See id*. § 251.001(15). As such,

9

RGA contends that the plain language of section 253.037, specifically addressing "general-purpose committees," does not apply to it. RGA does not suggest that it is not possible for an out-of-state political committee to become subject to Texas Election Code provisions directed at general-purpose committees, such as section 253.037. Rather, it urges that the two ways for an out-of-state political committee to become subject to these provisions do not apply to RGA because it did not voluntarily choose to file a campaign treasurer appointment under chapter 252 or spend more than twenty percent of its funds on in-state elections. *See id*. § 251.005(b), (c); *see also* § 251.001(15).

Bell does not dispute that, at the time the contributions were made, the exceptions in section 251.005(b) and (c) did not apply to RGA and that RGA, as an out-of-state political committee, was not subject to chapters 252 and 254, except for section 254.1581. Rather, Bell contends that, under the plain language of the statutory definitions, an out-of-state political committee must also be categorized as either a specific-purpose committee or a general-purpose committee and that in this instance RGA falls within the definition of a general-purpose committee. *See id*. § 251.001(13) (defining "specific-purpose committee"), (14) (defining general-purpose committee to include a political committee supporting two or more unidentified candidates).

To support his argument that RGA was also a general-purpose committee, Bell points to RGA's stated purpose of supporting Republican gubernatorial candidates and other "unidentified" state candidates in any state of the country. He urges that because RGA falls within the statutory definition of both a general-purpose committee and an out-of-state political committee, RGA is subject to Election Code provisions specifically directed to out-of-state political committees, such as section 254.1581, as well as sections of chapter 253 specifically directed to general-purpose

10

committees, such as section 253.037. Bell also points to the provision expressly excluding out-of-state political committees from the application of section 253.031's general prohibitions on contributions and expenditures without a campaign treasurer appointment in effect. *See id.* § 253.031(e). He urges that, if the legislature had intended to except out-of-state general-purpose political committees from section 253.037, it would have said so as it did in section 253.031.

The trial court agreed with Bell and concluded that RGA was both an out-of-state political committee and a general-purpose committee at the time of the disputed contributions. Based on this conclusion, the trial court interpreted the Election Code to allow a general-purpose committee that is also an out-of-state political committee to comply with section 253.037 by filing a campaign treasurer appointment with the TEC, the FEC, or the proper filing authority of any other state. Because RGA had not filed a campaign treasurer appointment with any of these authorities, however, the trial court held RGA liable to Bell for $2,000,000 "representing twice the sum of the First Contribution and the Second Contribution, for making these contributions at a time that it had not filed a campaign treasurer appointment." The issue then is whether RGA, as an out-of-state political committee, was also subject to the restrictions and requirements that apply to general-purpose committees in chapter 253, specifically section 253.037, at the relevant time.

We begin with the plain language of the statute. Section 251.005 makes clear that out-of-state political committees—whether or not they fall within the definition of a general-purpose committee—are not subject to chapter 252—the campaign treasurer appointment provisions—unless one of the exceptions in section 251.005 applies. *See id.* § 251.005 (specifically listing exceptions). Here, the parties agree that the exceptions did not apply to RGA and, therefore, that RGA was not

11

subject to chapter 252. Turning to the plain language of section 253.037, it does not require the appointment of a campaign treasurer but broadly prohibits general-purpose committees from "knowingly mak[ing] or authoriz[ing] a political contribution or political expenditure" until their appointment has been on file for 60 days. *See id.* § 253.037. Section 253.031 also expressly prohibits a political committee from "knowingly . . . mak[ing] or authoriz[ing] political expenditures . . . at a time when a campaign treasurer appointment for the committee is not in effect" or from "knowingly mak[ing] or authoriz[ing] a campaign contribution . . . unless the committee's campaign treasurer appointment has been filed not later than the 30th day before the appropriate election day." *Id*. § 253.031. But, section 253.031 expressly exempts out-of-state political committees from its prohibitions unless the committee is subject to chapter 252 under section 251.005. *See id*. § 253.031. Once again we observe that chapter 252 does not apply to out-of-state political committees unless one of section 251.005's specified exceptions applies and the legislature specifically exempted out-of-state political committees in section 253.031 from the prohibition on making contributions and expenditures when a campaign treasurer appointment for the committee was not in effect. It therefore follows that the legislature in section 253.037 did not intend to subject out-of-state political committees in that situation to the 60-day waiting period tied to the appointment of a campaign treasurer. A contrary interpretation would be nonsensical and would create an irreconcilable conflict with the express exemptions for out-of-state political committees in sections 251.005 and 253.031. *See Parker*, 249 S.W.3d at 396 (interpreting entire statute, not isolated portions).

The trial court resolved the interplay between chapter 252 and section 253.037 by concluding that an out-of-state political committee does not have to file a campaign treasurer

12

appointment with the TEC—as would be required for a general-purpose committee under section 252.009—but that it could comply with section 253.037 by filing an appointment with another state filing authority or the FEC. But we may not add requirements to a statute that are not contained in the plain language. *See City of Rockwall*, 246 S.W.3d at 629 (declining to read additional words into statute in construing statute); *Underkofler v. Vanasek*, 53 S.W.3d 343, 346 (Tex. 2001) ("We defer to the legislature's explicit policy determination that only two exceptions apply to the statute of limitations for these statutory claims, and we will not rewrite the statute to add . . . a third."); *Cameron v. Terrell & Garrett, Inc*., 618 S.W.2d 535, 540 (Tex. 1981) ("Only when it is necessary to give effect to the clear legislative intent can we insert additional words or requirements into a statutory provision."). Section 252.009 expressly requires general-purpose committees to file their campaign treasurer appointments with the TEC, and no other provision directs out-of-state political committees that they may file with the FEC or some other state filing authority in order to comply with section 253.037.[5]

Moreover, the trial court's interpretation would render the exceptions in section 251.005 and 251.031 superfluous. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous." (citation omitted)). In section 251.005, there would be no need to use the phrase "to the same extent as a political committee that is not an out-of-state committee" unless the two classifications—in-state and out-of-state committees—were

---

[5] This suggests that RGA could not comply with section 253.037 by filing a campaign treasurer report with the FEC or some other state filing authority, even if they attempted to do so. *See* Tex. Elec. Code § 252.009.

intended to be treated differently for purposes of the statutory campaign treasurer appointment and reporting requirements. *See* Tex. Elec. Code § 251.005. The exceptions in section 251.005 also refer broadly to "this title," not just chapters 252 and 254, when describing the scope of the Election Code to which out-of-state political committees become subject when one of the exceptions applies. *See id.* § 251.005(b), (c). If the legislature had intended for an out-of-state political committee to be subject to the campaign treasurer appointment provisions and the reporting requirements applicable to Texas committees, there was no need to create exceptions in section 251.005 expressly excluding out-of-state political committees from those provisions. *See Hogue*, 271 S.W.3d at 256. We conclude that the statute as a whole conflicts with the trial court's interpretation of section 253.037. *See Parker*, 249 S.W.3d at 396.

Bell argues that the TEC has expressly construed the Election Code to conclude that a political committee could simultaneously be both a general-purpose and an out-of-state political committee and cites a TEC opinion from 1992 to support this argument. *See* Tex. Ethics Comm'n Op. No. 65 (1992). Even if we were to conclude that the definition of a general-purpose committee could include an out-of-state political committee, the plain language of the statute exempts out-of-state political committees from the campaign treasurer appointment provisions. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008) (courts give "serious consideration" to agency's construction of statute so long as reasonable and "does not contradict the plain language of the statute"). To hold an out-of-state political committee—not subject to chapter 252—liable under section 253.037 for failing to file a campaign treasurer appointment with the FEC or some

14

other state filing authority would contradict, among other sections, the plain language of sections 251.005, 252.009, and 253.031.

Viewing the statute as a whole and based upon the relevant provisions' plain language, we conclude that the trial court erred by interpreting section 253.037 to require out-of-state political committees to file a campaign treasurer appointment—if not required to be filed with the TEC—with another state filing authority or with the FEC. *See Parker*, 249 S.W.3d at 396. We conclude then that the trial court erred by holding RGA liable for violating section 253.037 by failing to file a campaign treasurer appointment. We sustain RGA's first issue.

### ii) Section 253.032

In its second issue, RGA contends that the trial court erred by holding it liable for violating section 253.032 of the Election Code. Section 253.032, titled "Limitation on Contribution by Out-of-State Committee," states in relevant part:

(a) In a reporting period, a candidate, officeholder, or political committee may not knowingly accept political contributions totaling more than $500 from an out-of-state political committee unless, before accepting a contribution that would cause the total to exceed $500, the candidate, officeholder, or political committee, as applicable, receives from the out-of-state committee:

(1) a written statement, certified by an officer of the out-of-state committee, listing the full name and address of each person who contributed more than $100 to the out-of-state committee during the 12 months immediately preceding the date of the contribution; or

(2) a copy of the out-of-state committee's statement of organization filed as required by law with the Federal Election Commission and certified by an officer of the out-of-state committee.

15

Tex. Elec. Code § 253.032(a). Subsection (a) prohibits a "candidate, officeholder, or political committee" from "accepting" a contribution without also being provided certain information from the out-of-state political committee, and subsection (c) imposes criminal liability for violating this section. *See id*. § 253.032(a), (c).

RGA argues that the plain text of this provision imposes liability only for accepting campaign contributions without the proper paperwork, not for making such contributions. The trial court held otherwise, imposing liability on RGA based upon its findings that RGA had failed to provide the donor list to Texans for Rick Perry as set forth in section 253.032. The trial court concluded:

14. The RGA, as an out-of-state political committee not registered with the FEC, may not make a contribution to a candidate, officeholder or political committee in excess of $500 without first supplying a written statement listing the full name and address of each person who contributed more than $100 to the RGA during the twelve months immediately preceding the date of the contribution.

15. An out-of-state political committee that makes an unlawful contribution in support of a candidate, by not first supplying the required list of persons who contributed more than $100 to the out-of-state political committee in the twelve months immediately preceding the date of the contribution, is liable to an opposing candidate for twice the value of the amount of the unlawful contribution.

16. The RGA is liable to Bell for $2,000,000, representing twice the sum of the First Contribution and the Second Contribution, for making these contributions without providing a written statement listing the full name and address of each person who contributed more than $100 to the RGA during the 12 months immediately preceding the date of each contribution.

16

The trial court's interpretation, however, requires words to be read into section 253.032 because an out-of-state political committee making a contribution is not listed as an entity subject to the requirements in subsection (a). As stated in the preceding section, we may not "insert additional words or requirements into a statutory provision" unless "necessary to give effect to the clear legislative intent." *Cameron*, 618 S.W.2d at 540; *see also City of Rockwall*, 246 S.W.3d at 629 (declining to read additional words into statute in construing statute). The legislature knows how to impose liability for "making" contributions when it intends to do so. *See, e.g.*, Tex. Elec. Code § 253.003(a). Had the legislature intended to subject both the maker as well as the recipient to liability for violating section 253.032, it could have easily said so. *See Cameron*, 618 S.W.2d at 540 ("[W]ords excluded from a statute must also be presumed to have been excluded for a purpose."); *see also Osterberg*, 12 S.W.3d at 38 (courts "should not presume to add" to statute when legislature has demonstrated it "clearly knew" how to add phrase in other parts of statute).

Bell concedes that the "burden of compliance appears to be placed primarily on the entity receiving the contribution," but urges that "such a construction would render the provision unenforceable" and "do violence to the effectiveness of the provision." Bell argues that the only way to ensure that the list is accurate is to subject the maker of the contribution to the requirements in section 253.032. Bell also points to the trial court's conclusion that RGA did not properly disclose its donors to Texans for Rick Perry to support his position that the trial court properly held that RGA violated this section. Our function, however, is to apply the law as written. *See Lee v. City of Houston*, 807 S.W.2d 290, 293 (Tex. 1991) ("Our function is not to question the wisdom of the statute; rather, we must apply it as written." (citation omitted)). Applying the plain meaning of

17

section 253.032, we decline to broaden its scope to impose liability on RGA, the entity making the contribution. Thus, we conclude that the trial court erred by holding RGA liable for violating section 253.032. We sustain RGA's second issue.

### iii) Section 254.1581

In its third issue, RGA contends that the trial court erred by holding it liable for violating section 254.1581 of the Election Code. Section 254.1581, titled "Reporting by Out-of-State Political Committee," states:

> For each reporting period under this subchapter in which an out-of-state political committee accepts political contributions or makes political expenditures, the committee shall file with the commission a copy of one or more reports filed with the Federal Election Commission or with the proper filing authority of at least one other state that shows the political contributions accepted, political expenditures made, and other expenditures made by the committee. A report must be filed within the same period in which it is required to be filed under federal law or the law of the other state.

Tex. Elec. Code § 254.1581. Section 254.1581 imposes an obligation on out-of-state political committees to file "a copy" of reports that they have filed with other specified authorities and sets the time frame for doing so based on the deadline set by the other authority. *See id.*

Holding RGA liable for violating section 254.1581, the trial court made the following conclusions of law:

> 17.    For any period in which an out-of-state political committee makes political expenditures in connection with a non-federal Texas election, it must file with the TEC a copy of one or more reports filed *with the FEC or the proper filing authority of at least one other state*, showing the political contributions

18

accepted, political expenditures made and other expenditures made by the committee.

18. An out-of-state political committee that makes a contribution in support of a candidate and who fails to file required reports is liable to any opposing candidate for twice the amount not reported that is required to be reported.

19. The RGA is liable to Bell for $2,000,000, representing at least twice the sum of the contributions it received, the First Contribution and the Second Contribution, which political contributions and expenditures it has never reported to the TEC.

(Emphasis added). RGA urges the trial court's holding and conclusions implicitly required RGA to create a report showing its contributions and expenditures in order to file a copy of that report with the TEC. We agree.

RGA argues that section 254.1581 did not place such an obligation on it to file a copy with the TEC because it had not filed reports with the FEC or any other state filing authority. RGA, as a section 527 organization, filed reports with the IRS disclosing its political expenditures and contributions. *See* 26 U.S.C. § 527. RGA, however, did not file any reports with the TEC, and it is undisputed that RGA was not required and did not file with the FEC or any other state filing authority reports showing its political expenditures and contributions during the relevant time period.

Bell counters that the statute imposed a mandatory obligation on RGA to file a report with the TEC whether or not it had filed a report with the FEC or other state filing authority. He relies in part upon the TEC's rule 20.13 that states that out-of-state political committees are:

> required to file reports for each reporting period . . . in which the out-of-state political committee accepts political contributions or makes political expenditures in connection with a state or local election in Texas. Section 254.1581, Election Code, applies to a report required to be filed under this section.

19

1 Tex. Admin. Code § 20.13 (2012) (Texas Ethics Comm'n, Out-of-State Committees). This rule sets forth different ways to file a report depending on how the report was filed with the other authority. *See id.*

Turning to the words chosen by the legislature in section 254.1581, however, they expressly require that "a copy" be filed—not a report—and the deadline for filing the copy is tied to the deadline set by federal law or the other state law. *See Scott*, 309 S.W.3d at 930 ("Courts must not give the words used by the Legislature an 'exaggerated, forced, or constrained meaning.'" (citation omitted)). If the legislature had intended out-of-state political committees to file a report when none was otherwise required, it presumably would have said so and provided a deadline for filing the report not tied to the other authorities' deadlines. *See Cameron*, 618 S.W.2d at 540 (words excluded from statute presumed to be excluded for purpose). Further, we assume that the legislature was aware of section 527 organizations like the RGA and their filing requirements. *See American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001) ("'All statutes are presumed to be enacted by the legislature with full knowledge of the existing conditions of the law and with reference to it.'" (quoting *McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. 1942)). Section 527 organization's reports showing contributions and expenditures are posted on the IRS website. The legislature could have concluded that these types of organizations did not need to file reports with the TEC, given that their information was disclosed and available on the IRS website.

Applying the statute's plain language, we interpret section 254.1581 to require an out-of-state political committee to file a copy of a report showing its contributions and expenditures with the TEC only when it is required to file such a report with the FEC or other state filing authority in

the first instance.  We conclude then that the trial court erred by holding RGA liable for violating section 254.1581.  We sustain RGA's third issue.

**Cross Appeal**

Because we conclude that RGA did not violate the Election Code sections alleged by Bell, the trial court erred by awarding any statutory damages to Bell, attorney's fees, and costs based upon these alleged violations.  *See* Tex. Elec. Code §§ 253.131, 254.231.  On this basis, we overrule Bell's issue on cross appeal in which he seeks additional damages for the same alleged Election Code violations.

## CONCLUSION

Having sustained RGA's issues and overruled Bell's issue on cross appeal, we reverse the trial court's judgment, render judgment that Bell take nothing, and remand the cause to the trial court for the limited purpose of determining whether to award attorney's fees to RGA.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin;
    Justice Henson not participating

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed:   September 27, 2013

21